IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID C. NORDLUND,<br><br>        Plaintiff,<br><br>vs.<br><br>DOMINICK EUBANK, *et al.*,<br><br>        Defendants. | Case No. 3:20-cv-00085-JMK<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court at Docket 38 is Defendants' Motion for Summary Judgment. Plaintiff, representing himself, responded at Docket 41 with "Plaintiff's Opposition to Defendants' Motion for Summary Judgement [and] Counter Motion for Summary Judgement."[1] Defendants replied at Docket 44. For the reasons stated below, Defendants' Motion is GRANTED.

---

[1] Cross-motions for summary judgment must be filed separately per Local Rule 5.1(f)(2), and Plaintiff appears to allege a factual dispute that he views as material. *See* Docket 41 at 1 ("[D]efendant's version of the facts omit key pieces of information, of which the defendants knew or reasonably should have known. Therefore, plaintiff disputes what the defendant's claim as undisputed."). As such, the Court does not view Plaintiff's Opposition as a separate cross-motion for summary judgment. However, even if Plaintiff had made a proper cross-motion, the Court's reasoning and conclusion would remain unchanged.

## I. BACKGROUND

On or about April 17, 2019, Anchorage Police Department ("APD") officers arrived at 736 East 11th Avenue to investigate a trespass call.[2] The officers, including Defendants Eubank and Smith, approached Mr. Nordlund. Mr. Nordlund explained that he was at the property waiting for a friend. When asked his address, Mr. Nordlund replied that he lived at 2582 Talkeetna Spur Road, Talkeetna, Alaska.[3] The officers were advised by dispatch that he was a registered sex offender with his address listed as 2823 East Tudor Road, Anchorage, Alaska.[4] The video recording taken from Officer Eubank's vehicle shows that Mr. Nordlund said he had been living at that address "off and on" since June or July 2018 and moved between Talkeetna and Anchorage for work.[5] Mr. Nordlund claims that he explained to the officers that he had been into the probation office earlier that day, and "it was decided by him and his probation officer that he would return to Talkeetna from Anchorage that day. At that visit that day plaintiff moved back to Talkeetna."[6]

Following this conversation, Officers Eubank and Smith arrested Mr. Nordlund for Failure to Register as a Sex Offender pursuant to Alaska Stat. § 12.63.010.[7] Mr. Nordlund was then transported to Anchorage Correctional Complex ("ACC") for a bail hearing.

---

[2] Docket 41 at 2; Docket 39 at 2.
[3] Docket 41 at 2; Docket 39 at 3.
[4] Docket 41 at 2.
[5] Docket 41-2 at 4:10–4:30.
[6] Docket 41 at 2; *see also* Docket 41-2 at 4:20–4:30. Defendants appear to dispute that Mr. Nordlund told Officer Eubank that he had seen his probation officer, but they conclude that this fact is immaterial to the determination of probable cause. *See* Docket 44 at 2. For the purposes of summary judgment, the Court credits Mr. Nordlund's version of events as true.
[7] Docket 41 at 3.

*Nordlund v. Eubank, et al.*     Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment     Page 2
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 2 of 12

As Mr. Nordlund was being transported to ACC, Officer Eubank called Palmer Probation and, according to Mr. Nordlund, was advised that "[Mr. Nordlund] had been in the office that day and in compliance with [his] conditions."[8] Defendants allege that the probation officer only indicated to Officer Eubank that Mr. Nordlund "must of" put the Talkeetna address on his forms when he checked in with his probation officer.[9] For the purposes of summary judgment, the Court credits Mr. Nordlund's version of events as true.

The magistrate set bail at $1,000 appearance bond and required Mr. Nordlund to register his new address before release from ACC.[10] As he was being booked into ACC, small baggies containing a substance consistent with methamphetamine were found on his person.[11] Mr. Nordlund was charged with Misconduct Involving a Controlled Substance, and his bail was adjusted.[12] Mr. Nordlund was held at ACC for ten days before posting bail.[13] The State declined to pursue any charges against Mr. Nordlund.[14]

On August 31, 2020, Mr. Nordlund, representing himself, filed an Amended Complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Fourth Amendment right because they arrested him without probable cause.[15]

---

[8] Docket 15 at 4; Docket 41 at 5.
[9] Docket 41 at 3; Docket 41-1 at 3.
[10] Docket 39 at 3.
[11] *Id.* at 4; Docket 41-1 at 3.
[12] *Id.*
[13] Docket 15 at 4.
[14] *Id.* at 5.
[15] *Id.*

Nordlund v. Eubank, et al.                                                    Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment                                         Page 3
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 3 of 12

Defendants Richwine and Burns also responded to 736 East 11th Avenue, but the parties dispute their role in Mr. Nordlund's arrest.[16] Mr. Nordlund asserts that Officer Richwine had driven Officer Smith to the scene and was "directly training" Smith.[17] He asserts that Sergeant Burns was "on scene and directly in control of all officers' actions."[18] Defendants assert that neither observed nor participated in Mr. Nordlund's arrest.[19]

## II. LEGAL STANDARD

The Court will grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[20] A factual dispute is "material" if it could affect the outcome of the suit under the governing law.[21] Where there are disputed facts, the Court will adopt the version of facts presented by the nonmoving party (here, Mr. Nordlund) and draw all reasonable inferences in his favor.[22]

If the moving party has proven that there are no disputed material facts, it must then show that it is entitled to a judgment as a matter of law. This means that the

---

[16] *See* Docket 41 at 3–4; Docket 39 at 3. This is not material to the Court's decision because there was probable cause to arrest Mr. Nordlund regardless of Officer Richwine's and Sergeant Burns's conduct or positions.
[17] Docket 41 at 4.
[18] *Id.*
[19] Docket 39 at 3.
[20] Fed. R. Civ. P. 56(a).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).
[22] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (citing *Anderson*, 477 U.S. at 255).

*Nordlund v. Eubank, et al.*   Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment   Page 4
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 4 of 12

nonmoving party failed to show an essential element of a claim on which he has the burden of proof.[23]

## III. DISCUSSION

"Qualified immunity shields government actors from civil liability under U.S.C. 42 § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[24] To determine whether Defendants are immune from suit, the Court will consider (1) whether Defendants' conduct violated a constitutional right, and, if so, (2) whether that right was clearly established at the time of the event in question.[25] "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate."[26]

Mr. Nordlund asserts that Defendants violated his Fourth Amendment rights because Officers Smith and Eubank arrested him without probable cause.[27] Taking Mr. Nordlund's version of the events as true, the Court concludes that the Officers had probable cause to arrest him under Alaska Stat. § 12.63.010, and therefore, did not violate his constitutional rights.

A.   The Officers had Probable Cause to Arrest Mr. Nordlund

Probable cause exists if, under the totality of the circumstances known to the arresting officer, "a prudent person could have concluded that there was a fair probability

---

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[24] *Castro v. City of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (internal quotations omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987).
[25] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).
[26] *Id.* (internal quotations omitted).
[27] *See Wesby*, 138 S. Ct. at 586; *see also* Alaska Stat. § 12.25.030(b). Mr. Nordlund only challenges the search conducted at ACC insofar as it relates to his arrest on April 17, 2019.

*Nordlund v. Eubank, et al.*  Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment  Page 5
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 5 of 12

that [the arrestee] had committed a crime."[28] Whether probable cause exists is "not a high bar," and requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."[29] The determination is based on the information the officer had at the time of the arrest, and the Court does not consider additional facts that became known to the officer after the arrest was made.[30] This is an objective standard, meaning that the Court considers whether probable cause existed without considering what the Officers were subjectively thinking or intending at the time of the arrest.[31]

Here, it is undisputed that Mr. Nordlund is a convicted sex offender who was required to register and update his address under Alaska Stat. § 12.63.010. This statute requires, in relevant part, that Mr. Nordlund shall:

> provide written notice of [a change in address] by the next working day following the change to the Alaska state trooper post or municipal police department located nearest to the residence . . .[32]
>
> . . . .
>
> . . . annually, during the term of a duty to register under AS 12.63.020, on a date set by the department at the time of the sex offender's or child kidnapper's initial registration, provide written verification to the department, in the manner required by the department, of the sex offender's or child kidnapper's address and notice of any changes to the information previously provided under (b)(1) of this section.[33]

---

[28] *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).
[29] *Wesby*, 138 S. Ct. at 586.
[30] *City of El Monte*, 515 F.3d at 940.
[31] *Id.* (citing *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).
[32] Alaska Stat. § 12.63.010(c).
[33] Alaska Stat. § 112.63.010(d)(1).

*Nordlund v. Eubank, et al.*  Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment  Page 6
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 6 of 12

Mr. Nordlund admits that he told Officers Eubank and Smith that he lived at a different address than the address he was registered under.[34] Mr. Nordlund said that he lived in Talkeetna "off and on" since June 2018,[35] and he does not dispute that as of April 16, 2019, his registered address was in Anchorage.[36] This discrepancy creates a "fair probability" that Mr. Nordlund failed to update his address as required by Alaska Stat. § 12.63.010.[37] Mr. Nordlund alleges that "it was decided by him and his probation officer that he would return to Talkeetna from Anchorage that day," and as such, he had until the next business day to formally update his address.[38] However, Mr. Nordlund told Officer Eubank that his home was the Talkeetna address and that he lived there "on and off" since June 2018, which contradicts his later statement to Officer Eubank that he moved earlier that day.[39] Given the totality of the circumstances, a reasonable officer could have determined he was not in compliance with the reporting requirements of Alaska Stat. § 12.63.010. As such, the arrest did not violate Mr. Nordlund's constitutional rights.

Mr. Nordlund appears to argue that probable cause did not exist because the State dropped its charges against him. Assuming Mr. Nordlund was ultimately innocent, probable cause still existed at the time of his arrest because it does not require an actual showing of criminal activity, only a *probability* that criminal activity had occurred.[40]

---

[34] Docket 15 at 2.
[35] Docket 41-2 at 4:10–4:31, 12:45–13:20,14:04–14:20, 14:55–15:00.
[36] Docket 15 at 2.
[37] *See City of El Monte*, 515 F.3d at 940.
[38] *See* Docket 41 at 2; Alaska Stat. § 12.63.010(c).
[39] Docket 41-2 at 4:10–4:31, 12:45–13:20, 14:04–14:20, 14:55–15:00.
[40] *See Wesby*, 138 S. Ct. at 586.

*Nordlund v. Eubank, et al.* Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment Page 7
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 7 of 12

Further, probable cause still exists when an officer makes an erroneous arrest based on a reasonable mistake of fact.[41]

B.  **The Officers Were Not Required to Investigate or Believe Mr. Nordlund's Explanation Prior to Arrest**

Mr. Nordlund argues that he provided the officers with a valid explanation of his innocence, which the officers did not investigate prior to arresting him. Mr. Nordlund states that he explained to Officer Eubank that he saw his probation officer earlier that day and the two determined that he would move to Talkeetna, and, as such, he had until the following day to update his address under the statute.[42] Indeed, Mr. Nordlund alleges that Palmer Probation verified his explanation after the arrest.[43] Probable cause did not exist, he argues, because "a reasonable, prudent person would have contacted the Office of Probation" and verified his explanation before making the arrest.[44]

In support of this argument, Mr. Nordlund cites to caselaw stating that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."[45] It is certainly true that an officer may take an arrestee's explanation of events into account when determining probable cause. However, simply providing an explanation of innocence does not, on its own, negate probable cause

---

[41] *Heien v. North Carolina*, 574 U.S. 54, 61 (2014); *see also City of El Monte*, 515 F.3d at 940–41 ("it is essential to avoid hindsight analysis [of probable cause], *i.e.*, to consider additional facts that became known only after the arrest was made).
[42] Docket 15 at 2.
[43] *Id.* at 5.
[44] *Id.* at 4.
[45] *Colon v. City of New York*, 455 N.E.2d 1248 (N.Y. 1983).

*Nordlund v. Eubank, et al.*  Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment  Page 8
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 8 of 12

that would otherwise exist.[46] Once probable cause is established, a police officer is not constitutionally required to "investigate independently every claim of innocence."[47] Law enforcement are not required to accept a suspect's story as true, and even a plausible explanation does not "in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."[48]

For example, in *Rohde v. City of Roseburg*, probable cause existed for an arrest even through the arrestee (Mr. Rohde) protested his innocence to the officers and offered a reasonable explanation for the allegedly illegal conduct.[49] Only after the arrest did the officers verify Mr. Rohde's explanation and subsequently release him.[50] The Ninth Circuit found that Mr. Rohde's constitutional rights were not violated because probable cause existed for the arrest, regardless of his ultimately truthful explanation of events.[51] In sum, "probable cause is by definition a standard that hinges on probability rather than certainty, so a showing of probable cause need not rule out other explanations that are merely possible."[52]

---

[46] *Baker v. McCollan*, 443 US 137, 145–46 (1979) (explaining that once probable cause is established, a law enforcement officer is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.").
[47] *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (internal citation and quotation marks omitted).
[48] *Spalsbury v. Sisson*, 250 F. App'x 238, 246 (10th Cir. 2007) (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)).
[49] *Rohde v. City of Roseburg*, 137 F.3d 1142, 1143 (9th Cir. 1998).
[50] *Id.*
[51] *Id.* at 1144.
[52] *Yi v. Yang*, 282 P.3d 340, 346–47 (Alaska 2012) (holding that arrestee's alternative explanation of justified behavior did nothing to diminish the existence of probable cause).

*Nordlund v. Eubank, et al.*     Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment     Page 9
Case 3:20-cv-00085-JMK    Document 45    Filed 12/21/21    Page 9 of 12

The Court acknowledges that probable cause does not exist when "minimal further investigation" would have exonerated the suspect.[53] However, this only includes investigating basic evidence that is readily available at the scene, such as briefly interviewing witnesses who are physically present or watching available surveillance footage.[54] Here, Mr. Nordlund did not present any evidence to Officer Eubank besides his own narrative, which was not conclusive and would require more than "minimal" investigation to corroborate.[55] As the Sixth Circuit explained, the Constitution does not require an officer "to investigate independently every claim of innocence. . . . To hold otherwise would allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'"[56]

**C.     Officer Eubank Did Not Commit a Mistake of Law**

Last, Mr. Nordlund argues that Officer Eubank did not accurately understand the change of residence requirements under Alaska Stat. § 12.63.010. In support, Mr. Nordlund cites to a thirty second portion of the conversation between Officer Eubank and the probation office.[57] This exchange does not show that Officer Eubank misunderstood the statute's change of address requirements under Alaska Stat. § 12.63.010(c). In the video, Officer Eubank explains the address discrepancy to the

---

[53] *Kuehl v. Burtis*, 173 F.3d 646, 650–51 (8th Cir. 1999).
[54] *Romero v. Fay*, 45 F.3d 1472, 1476–77 (10th Cir. 1995) (collecting cases).
[55] *See id.* (holding that officer was not required to interview alibi witness in order to establish probable cause); *Acosta v. Tourner*, No. 1:09–CV–01560 AWI GSA, 2010 WL 3431768 (E.D. Cal. Aug. 31, 2020) (officers were not required to visit nearby bar that would have verified arrestee's alibi); *Criss*, 867 F.2d at 263 (officers were not required to investigate statements of defendant that allegedly stolen property was owned by roommate).
[56] *Criss*, 867 F.2d at 263.
[57] Docket 41 at 4 (citing Docket 41-2 at 15:00–15:30).

*Nordlund v. Eubank, et al.*                                                                                  Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment                                                          Page 10
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 10 of 12

probation office, including that "[Mr. Nordlund] says he's been keeping in touch with his probation officer and stuff like that, but, like I said, he said he has to register yearly and has been living at this address since June 2018."[58] Mr. Nordlund interjects that Officer Eubank "doesn't know if he's just moved up there today or not," but then goes on to interject that he had been living in Talkeetna "off and on" since June 2018.[59] Officer Eubank then confirms that Mr. Nordlund "was just in there with you guys and registered? . . . Okay, and did he have to provide any updated information about [indistinguishable]?"[60] Overall, this shows that Officer Eubank had an accurate understanding of the yearly reporting requirements under Alaska Stat. § 12.63.010(d)(1), and more importantly, that Officer Eubank reasonably understood Mr. Nordlund to be living in Talkeetna since June 2018 without updating his address in violation of Alaska Stat. § 12.63.010(c).

Because Officer Eubank and Smith had probable cause to arrest Mr. Nordlund under Alaska Stat. § 12.63.010, they did not violate his Fourth Amendment rights. As such, the Court does not need to determine whether the Officers are otherwise entitled to qualified immunity, whether Defendants Richwine and Burns are supervisory liable, or whether the Anchorage Police Department is liable.

---

[58] Docket 41-2 at 12:42–14:20.
[59] *Id.*
[60] Docket 41-2 at 15:11–15:27.

*Nordlund v. Eubank, et al.* Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment Page 11
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 11 of 12

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

IT IS SO ORDERED this 21st day of December, 2021, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Nordlund v. Eubank, et al.*　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:20-cv-00085-JMK
Order Granting Defendants' Motion for Summary Judgment　　　　　　　　Page 12
Case 3:20-cv-00085-JMK   Document 45   Filed 12/21/21   Page 12 of 12